

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00292-CR

JAMES SAMPLE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

### FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

----------

### OPINION

----------

### Introduction

Appellant James Sample appeals his conviction and sentence for felony driving while intoxicated (DWI).[1]  In three issues, he contends that the trial court erred by (1) denying his motion to suppress evidence, (2) denying his motion to quash the indictment, and (3) imposing cruel and unusual punishment.  We affirm.

----

[1]*See* Tex. Penal Code Ann. §§ 49.04(a), .09(b)(2) (West Supp. 2012).

## Background Facts and Procedural History

Lauren Staten and Amy Frazier had been to Denton for ice cream and on their way home stopped at Hunter's convenience store in Sanger. While they were still in the car, Appellant pulled up in a white and yellow van that he parked very close and perpendicular to them. He climbed out of the van, told the girls that they did not belong there, and stumbled into the store. Amy thought he looked "very drunk." She stayed in the car while Lauren, after some hesitation, entered the store to buy cigarettes.

Inside, Appellant approached Lauren in a way she found offensive. Noting that "his eyes weren't right," she guessed he was "on a good amount of drugs." When she rebuffed his advances, he pulled up his shirt, called her names, and made racial remarks. Watching from the car in the parking lot, it appeared to Amy that Appellant was yelling at Lauren and that her friend was getting upset.

Lauren left the store without making a purchase. Appellant continued to harass her as he followed her into the parking lot. Finally, after Lauren warned him that she was calling the police, he climbed into the van and left.

The girls called 911. Officers arrived and were taking the girls' statements in the parking lot when the girls exclaimed that Appellant's van was passing by. Officer Stoney Ward promptly pulled the van over.

Officer Ward recognized Appellant from previous encounters and could tell that he had been drinking. Appellant smelled strongly of alcohol, his eyes were red, his speech slurred, and his mannerisms lethargic. The officer observed an

open beer bottle in the van as well as spilled liquid on the floorboard that smelled of alcohol.

Officer Ward administered field-sobriety tests, concluded that Appellant was intoxicated, and arrested him for DWI.

Checking Appellant's criminal history revealed two prior DWI convictions, so Officer Ward took Appellant to Denton Regional Hospital for a mandatory blood draw.

Appellant did not cooperate at the hospital—shouting obscenities to hospital staff and officers—and he had to be forcibly restrained before the phlebotomist could draw a blood specimen. The specimen was sent to the Department of Public Safety Crime Laboratory in Garland for analysis. Results showed that the specimen had a blood-alcohol concentration of 0.19 grams of alcohol per 100 milliliters of blood—almost two-and-a-half times the legal limit.

The grand jury returned an indictment charging Appellant with felony DWI, enhanced by two prior misdemeanor DWI convictions and two prior felonies— retaliation and felony assault.[2] On the morning of the first day of trial, Appellant moved to quash the indictment on the grounds that one of the jurisdictional DWIs is void because Appellant pled guilty in that case without counsel and without waving a jury trial.

---

[2]When a defendant is convicted of a third-degree felony while having two prior, sequential felony convictions, he faces a term of "life, or for any term of not more than 99 years or less than 25 years." *Id.* § 12.42(d) (West Supp. 2012).

3

At a hearing on the motion to quash, Appellant testified at first that he did not remember whether he had refused court-appointed counsel. But he later admitted that he had refused counsel so he could represent himself. He also testified that he had filled out paper work indicating that he understood the dangers and disadvantages of representing himself but that he had chosen to do so regardless. He further testified that he did not really remember signing any documents waiving a jury trial.

When the State produced the judgment from Appellant's prior conviction, Appellant acknowledged that he was the named defendant. The State's fingerprint expert confirmed that the fingerprints on the face of the judgment matched Appellant's. The judgment also indicates on its face that Appellant "intelligently, knowingly, and voluntarily waived the right to counsel, and waived the right to trial by jury." The trial court denied the motion to quash, and the case went to trial.

At trial, after the State had concluded its case-in-chief on guilt-innocence and rested, Appellant urged for the first time an oral motion to suppress all evidence obtained after the stop, alleging that Officer Ward stopped him without reasonable suspicion. The trial court summarily denied the motion to suppress.

The defense rested without presenting evidence, the jury found Appellant guilty, and Appellant pled "true" to the notice of habitual-felony-offender status in the indictment.

4

Both sides offered evidence on punishment. The State presented Appellant's criminal history, which was substantial. State's Exhibits 10 through 33 included judgments of convictions spanning decades. In 1990, Appellant had been convicted of resisting arrest; in 1991, of criminal trespass and DWI; in 1992, assault and resisting arrest; in 1993, criminal trespass; in 1994, he was convicted twice of violating protective orders, once for assault, and once for resisting arrest; in 1996, he had four criminal trespass convictions and one assault; in 1997, assault-family violence, two criminal-trespass convictions, and harassment; in 1998, he was sentenced to five years in prison for retaliation; in 2004, another six years for assault-family violence; and in 2010, he picked up another conviction for assault-bodily injury. After deliberating on the issue of punishment, the jury assessed thirty-six years' confinement, and the trial court sentenced Appellant accordingly.

## Motion to Suppress

In his first issue, Appellant claims that the trial court erred by denying his motion to suppress because Officer Ward lacked reasonable suspicion to justify the stop. The State replies that Appellant failed to preserve his complaint because he first raised it after the State had presented all the evidence he later sought to have suppressed—in fact, after the State had rested its case-in-chief at guilt-innocence. We agree with the State.

To preserve a complaint for review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds

5

for the desired ruling if they are not apparent from the context of the request, objection, or motion.[3]  Tex. R. App. P. 33.1(a)(1); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Clay v. State*, 361 S.W.3d 762, 765 (Tex. App.—Fort Worth 2012, no pet.).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule.  Tex. R. App. P. 33.1(a)(2); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011).  A reviewing court should not address the merits of an issue that has not been preserved for appeal.  *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g); *Clay*, 361 S.W.3d at 765.

An objection must be made as soon as the basis for the objection becomes apparent.  Tex. R. Evid. 103(a)(1); *Pena*, 353 S.W.3d at 807; *see Lackey v. State*, 364 S.W.3d 837, 843–44 (Tex. Crim. App. 2012) (discussing policies underlying the timeliness requirement); *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002) ("We have consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence.  This is true even though the error may concern a constitutional right of the defendant."(citations omitted)); *Reyes v. State*, 361 S.W.3d 222, 228–29 (Tex. App.—Fort Worth 2012, pet. ref'd).

---

[3]A motion to suppress, written or oral, is nothing more than a specialized objection to evidence.  *See Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981) (op. on reh'g).

6

An exception to this requirement may occur when a trial judge instructs the parties before trial to withhold their objections until after the evidence has been presented. *See Garza v. State*, 126 S.W.3d 79, 84–85 (Tex. Crim. App. 2004) (explaining that the holding "is not meant to apply in situations outside the special circumstances of this case"). Under normal circumstances, however, objecting after evidence is already admitted is untimely. *See, e.g.*, *Ratliff v. State*, 320 S.W.3d 857, 861–62 (Tex. App.—Fort Worth 2010, pet. ref'd) (holding that appellant's failure to object at the time officer described evidence and explained how he found it was untimely and did not preserve error); *Tell v. State*, 908 S.W.2d 535, 544 (Tex. App.—Fort Worth 1995, no pet.) (holding that defendant's objection to officer's testimony after officer had already answered questions about objected-to evidence was untimely and did not preserve error); *Thomas v. State*, 884 S.W.2d 215, 216–17 (Tex. App.—El Paso 1994, pet. ref'd) (holding that appellant's objection to officers' testimony after they had testified was untimely and did not preserve error).

There is nothing in the record to indicate that any exception applies. Appellant did not file a pretrial motion to suppress and he did not object before or during the state's case-in-chief to the admissibility of any evidence officers obtained after the stop, and the trial court did not instruct him to withhold his objections until after the evidence came in. When Appellant finally did object, it was through an oral motion to suppress after the State had rested its case-in-chief. Appellant's motion to suppress—made *after* the State had presented all its

evidence on guilt-innocence and rested—was untimely, and therefore preserved nothing for our review. *See* Tex. R. Evid. 103(a)(1); *Pena*, 353 S.W.3d at 807; *Ratliff*, 320 S.W.3d at 861–62. Accordingly, we overrule Appellant's first issue.

**Motion to Quash**

In his second issue, Appellant contends that the trial court erred by denying his motion to quash. The indictment alleged that Appellant had two prior DWIs, which enhanced this third one to a felony. *See* Tex. Penal Code Ann. § 49.09(b)(2). Appellant moved to quash the indictment, alleging that one of the priors is void because at the time he pled guilty in that case he had not waived his rights to counsel or jury trial. The issue at the hearing on the motion to quash was whether Appellant had waived his rights before he pled. After the hearing, the trial court found that he had and it denied the motion. Appellant challenges that ruling.

The standard of review for assessing a trial court's ruling on a motion to quash turns on which judicial actor is best positioned to determine the issue in controversy. *See Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Questions of law—such as the sufficiency of an indictment or the constitutionality of a statute—are reviewed de novo because neither the trial court nor the reviewing court occupies an appreciably better position than the other to decide the issue, whereas rulings that turn on evaluations of witness credibility and demeanor are reviewed for an abuse of discretion because the appellate court—deciding the issue from a cold record—is in an appreciably weaker position than

8

the trial court. *See State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004); *Guzman*, 955 S.W.2d at 89; *Ahmad v. State*, 295 S.W.3d 731, 739 (Tex. App.—Fort Worth 2009, pet. ref'd) (op. on reh'g); *cf. Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007) (applying de novo review to decide constitutionality of statute challenged in motion to quash), *cert. denied*, 553 U.S. 1007 (2008).

In this case, Appellant challenges neither the sufficiency of the indictment nor the constitutionality of a statute. He contends, rather, that the trial court made the wrong ruling after it weighed the evidence presented at the hearing on his motion to quash. That evidence included Appellant's testimony, the judgment of the prior conviction, and the testimony of a fingerprint expert matching Appellant's fingerprints with those on the face of the judgment.

When the State seeks to enhance the punishment range for a charged offense and relies on a prior judgment in the indictment to do so, it "must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction." *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). The State may prove both of these elements by the defendant's admission or by "documentary proof (such as a judgment)" that contains sufficient information to establish both elements. *Id.* at 921–22. Once the State links the defendant to a prior judgment, the burden shifts to the defendant to prove the judgment is void. *Johnson v. State*, 725 S.W.2d 245, 247 (Tex. Crim. App. 1987).

9

When a defendant collaterally attacks the validity of a prior conviction on the basis that he was denied his right to counsel, he must prove that he did not voluntarily, knowingly, and intelligently waive his right to counsel. *Garcia v. State*, 909 S.W.2d 563, 566 (Tex. App.—Corpus Christi 1995, pet ref'd) (citing *Disheroon v. State*, 687 S.W.2d 332, 334 (Tex. Crim. App. 1985)). Similarly, when a defendant collaterally attacks a prior conviction on the grounds that it does not show that he validly waived a jury trial, he has the burden to show that the entire record is silent on waiver. *West v. State*, 720 S.W.2d 511, 519 (Tex. Crim. App. 1986), *cert. denied*, 481 U.S. 1072 (1987); *Tate v. State*, 120 S.W.3d 886, 890 (Tex. App.—Fort Worth 2003, no pet.).

In this case, the State presented the judgment from the prior conviction and linked it to Appellant. Appellant concedes that the burden at that point shifted to him to prove that the judgment was not entitled to a presumption of regularity. He argues, however, that his testimony at the hearing "established that he neither waived his right to a jury trial nor his right to counsel." We review the trial court's decision that Appellant waived his rights under the abuse of discretion standard because the trial court's decision is a mixed question of law and fact that "turns" on the trial court's evaluation of credibility and demeanor. *See Moff*, 154 S.W.3d at 601; *Guzman*, 955 S.W.2d at 89. *See also Loserth v. State*, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998) ("We have suggested that a question 'turns' on an evaluation of credibility and demeanor when the testimony of one or more witnesses, if believed, is *always* enough to add up to what is

10

needed to decide the substantive issue."). In applying that standard of review, we are to affirm the trial court's ruling so long as it is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g).

First, we hold that the trial court acted within its discretion to determine that Appellant did not prove that he did not voluntarily, knowingly, and intelligently waive his right to counsel because after initially stating that he did not remember waiving counsel, Appellant admitted that he did waive counsel in order to represent himself. He further admitted during his testimony that he signed some paperwork admonishing him of the dangers and disadvantages of self-representation. *See Faretta v. California*, 422 U.S. 806, 834–36, 95 S. Ct. 2525, 2541 (1975); *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984). Given Appellant's testimony, we hold that it was within the zone of reasonable disagreement for the trial court to determine that Appellant had not met his burden of proving that he did not voluntarily, knowingly, and intelligently waive his right to counsel. *See Garcia*, 909 S.W.2d at 566.

Second, the absence of a written jury waiver in the court's file does not render a judgment void. *Ex parte Sadberry*, 864 S.W.2d 541, 543 (Tex. Crim. App. 1993); *State v. Garcia*, 905 S.W.2d 7, 9 (Tex. App.—San Antonio 1995, pet. ref'd). We begin with a presumption of the regularity of trial court proceedings. *Kelley v. State*, 676 S.W.2d 104, 108 (Tex. Crim. App. 1984); *Egger v. State*, 62 S.W.3d 221, 224 (Tex. App.—San Antonio 2001, no pet.). Absent an affirmative

11

showing to the contrary, a recitation in the trial court's judgment alone is sufficient to show a valid jury waiver. *Breazeale v. State*, 683 S.W.2d 446, 450 (Tex. Crim. App. 1984) (op. on reh'g); *Egger*, 62 S.W.3d at 224. Here, the judgment recites that Appellant "appeared Pro Se, and intelligently, knowingly, and voluntarily waived the right to counsel, and waived the right to trial by jury, and, thereafter . . . entered a plea of guilty. . . ." Appellant offered very little, if anything, to the contrary, merely testifying that he thought, but was not sure, that the judge explained the waiver of a jury trial to him, but that he did not remember signing a jury waiver. Under these circumstances, we hold that it was within the zone of reasonable disagreement for the trial court to conclude that Appellant did not meet his burden of showing that the prior judgment was not entitled to the presumption of regularity. *See West*, 720 S.W.2d at 519; *Tate*, 120 S.W.3d at 890.

Because we hold that the trial court acted within the bounds of its discretion by denying Appellant's motion to quash, we overrule Appellant's second issue.

### Punishment

In his third issue, Appellant argues that his thirty-six year sentence for DWI is cruel and unusual punishment.

As stated above, ordinarily, to preserve an issue for appellate review, an appellant must have first raised the issue in the trial court. Tex. R. App. P. 33.1(a); *see also Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App.

12

2006) (discussing Rule 33.1). A sentencing issue may be preserved by objecting at the punishment hearing, or when the sentence is pronounced. *See, e.g.*, *Idowu v. State*, 73 S.W.3d 918, 923 (Tex. Crim. App. 2002) (appellant failed to preserve error as to restitution amount by failing to object at the punishment hearing to amount of restitution sought by the prosecution); *Russell v. State*, 341 S.W.3d 526, 527–28 (Tex. App.—Fort Worth 2011, no pet.) (appellant failed to preserve Eighth Amendment complaint when he did not object at sentencing). In some instances, an appellant may preserve a sentencing issue by raising it in a motion for new trial. *See, e.g., Bitterman v. State*, 180 S.W.3d 139, 142–43 (Tex. Crim. App. 2005) (appellant raised issue of plea breach in motion for new trial). The requirement that an objection be raised in the trial court assumes that the appellant had the opportunity to raise it there. *See Hardeman v. State*, 1 S.W.3d 689, 690 (Tex. Crim. App. 1999) (appellant did not allege that he did not have an opportunity to object when sentence was pronounced and so failed to preserve error); *Issa v. State*, 826 S.W.2d 159, 161 (Tex. Crim. App. 1992) (permitting appellant to raise his objection for the first time in a motion for new trial since "appellant had no opportunity to object to the trial court's action until after that action was taken"). Thus, when an appellate court finds that error has not been preserved, it will often recite the times at which the appellant had the opportunity to object, but failed to do so. *See, e.g., Idowu*, 73 S.W.3d at 920 ("Neither appellant nor his counsel objected at the punishment hearing . . . ."). An appellant fails to preserve error by failing to object when he had the opportunity;

13

conversely, if an appellant never had the opportunity to object, then he has not forfeited error. *See Rickels v. State*, 108 S.W.3d 900, 902 (Tex. Crim. App. 2003) (appellant did not forfeit his objection since "the [trial] court modified the terms of Rickels's probation without a hearing, and Rickels had no opportunity to object."); *Cobb v. State*, 95 S.W.3d 664, 666 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (appellant did not forfeit challenge to language in written judgment "[b]ecause the judgment was not prepared until after the end of the hearing, [therefore] appellant could not have complained at the hearing about any alleged defect in the judgment.").

Here, although Appellant did address the trial court and expressed "shock" at his "situation," at no time did he raise a specific objection claiming that the punishment the jury assessed violated constitutional protections against cruel and unusual punishment. Nor did Appellant make a specific objection or complaint in a motion for new trial. *See Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd) (citing Tex. R. App. P. 33.1(a) and *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) and explaining that appellant could have also preserved his punishment claim by making the complaint in a motion for new trial).

The court of criminal appeals has said that the requirement that an objection be raised in the trial court assumes that the appellant had the opportunity to raise it there. *Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013) (citing *Hardeman*, 1 S.W.3d at 690). Here, the record shows that

14

Appellant had the opportunity to raise his complaint that his punishment was unconstitutional but failed to do so. Under these circumstances he has failed to preserve his claim.

Additionally, when a sentence is within the relevant statutory range of time, that punishment is "generally not subject to challenge for excessiveness." *Means v. State*, 347 S.W.3d 873, 875 (Tex. App.—Fort Worth 2011, no pet.) (citing *Kim*, 283 S.W.3d at 475–76); *accord Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006) (holding that "[s]ubject only to a very limited, 'exceedingly rare,' and somewhat amorphous Eighth Amendment gross-disproportionality review, a punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal").

Appellant claims that his thirty-six year sentence is cruel and unusual punishment considering the severity of his offense and that it violates both state and federal constitutional prohibitions against cruel and unusual punishment. Even if we were to reach the merits of Appellant's complaint in the interests of justice, we are not persuaded that his sentence is cruel and unusual. *See Vrba v. State*, 69 S.W.3d 713, 716, 724–25 (Tex. App.—Waco 2002, no pet.) (holding that a sixty-year sentence for a DWI conviction where the defendant had an extensive criminal history was not grossly disproportionate and did not violate his Eighth Amendment rights); *see also Ewing v. California*, 538 U.S. 11, 20–21, 123 S. Ct. 1179, 1185 (2003) (recognizing that the Eighth Amendment "contains a 'narrow proportionality principle' that 'applies to noncapital sentences'" in

"exceedingly rare" cases) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996–97, 111 S. Ct. 2680, 2702–03 (1991) (Kennedy, J., concurring in part and concurring in judgment) and *Rummel v. Estelle*, 445 U.S. 263, 272, 100 S. Ct. 1133, 1138 (1980)). Thirty-six years is well within the relevant statutory range of twenty-five years to ninety-nine years or life for a third-degree felony DWI with two prior, sequential felony convictions. Tex. Penal Code Ann. § 12.42(d).

The State's evidence at punishment included judgments of Appellant's prior convictions that spanned three decades. The record shows that in addition to the two prior and the instant DWI convictions, between the years 1990 and 2011, Appellant was convicted multiple times for resisting arrest (three times), criminal trespass (eight), assault (six), and violating protective orders (twice). In addition, he had one conviction for harassment and received prison terms for retaliation and assault-family violence.

A repeat offender's sentence is "based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes." *Hicks v. State*, 15 S.W.3d 626, 632 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (quoting *Rummel*, 445 U.S. at 284, 100 S. Ct. at 1144). Therefore, even if we assumed for the sake of argument that Appellant had preserved his punishment claim, considering the present offense together with his criminal history, we would hold that his thirty-six year sentence is not cruel and unusual

punishment. *See Rummel*, 445 U.S. at 284–85, 100 S. Ct. at 1144–45; *Hicks*, 15 S.W.3d at 632–33. Accordingly, we overrule Appellant's third issue.

## Conclusion

Having overruled each of Appellant's three issues, we affirm the trial court's judgment.


ANNE GARDNER
JUSTICE

PANEL: GARDNER, MCCOY, and MEIER, JJ.

PUBLISH

DELIVERED: June 13, 2013