

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00076-CR

JUAN ANTONIO MALDONADO                                          APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

### FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

----------

### MEMORANDUM OPINION[1]

----------

In two points, appellant Juan Antonio Maldonado appeals his third-degree-felony conviction and his eight-year sentence for driving while intoxicated (DWI).[2] Appellant contends that the jury erred by assessing his punishment at eight

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. §§ 49.04(a) ("A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place."), .09(b)(2) (West Supp. 2013).

years' confinement and that the evidence is insufficient to support his conviction. We affirm.

**Background Facts**

One night in February 2012, Janet Obeta was driving to work in Arlington when appellant crashed his car into her car on its passenger side. After the crash, appellant continued driving while Obeta followed him and called 911. After appellant and Obeta stopped driving, Obeta asked appellant why he had crashed into her car, and appellant said that he was sorry and that he was going to give Obeta $2,000.

Arlington police officer Matt Johnson received a dispatch and arrived at the scene. To Officer Johnson, appellant looked dazed and confused; he had a "slow reaction time." Appellant told Officer Johnson that he had been drinking alcohol at a nearby club, admitted that he should not have been driving, conceded that he had caused the crash, and stated "that he believed he was intoxicated . . . or that he had had too much to drink." Officer Johnson noticed that appellant's eyes were red and bloodshot and that his breath smelled like alcohol. Appellant was not, however, slurring his words. Also, he did not say anything inappropriate or have trouble standing, and he appropriately provided his driver's license and his proof of insurance to Officer Johnson. While appellant was walking after the police arrived, Obeta noticed that he was staggering.

Upon Officer Johnson's request, appellant performed three standardized field sobriety tests on a flat concrete surface.[3]   On the horizontal-gaze-nystagmus test, Officer Johnson saw four (of six) "clues" that indicated appellant's intoxication.   On the walk-and-turn test, Officer Johnson saw four clues of appellant's intoxication, and on the one-legged-stand test, Officer Johnson saw two clues.   Because Officer Johnson believed that appellant had lost the normal use of his mental and physical faculties, he arrested appellant for DWI.

At a jail, appellant provided two breath samples for analysis in an Intoxilyzer machine.   The machine measured the samples at alcohol concentrations[4] of .071 and .072.

Appellant also agreed to answer Officer Johnson's questions.  In doing so, he said that he had started drinking alcohol at approximately 3:30 p.m., that he had consumed several beers, and that he had drunk some alcohol approximately twenty minutes before the crash, which occurred at approximately 10:45 p.m.  At the jail, appellant again performed two of the field sobriety tests and, according to Officer Johnson, did "rather well" on them.

---

[3]Officer Johnson testified that he had received training, through taking a course and through on-the-job mentoring, on properly administering these tests. Officer Johnson's testimony revealed his knowledge concerning the administration of the tests.

[4]*See* Tex. Penal Code Ann. § 49.01(1)(A) (West 2011).

A Tarrant County grand jury indicted appellant for DWI. The indictment alleged that appellant had prior convictions—in 2004 and 2009—for DWI.[5] Appellant filed several pretrial motions and pled not guilty.

After receiving evidence and arguments from the parties, the jury deliberated for twenty minutes and found appellant guilty. The parties presented further evidence and arguments concerning appellant's punishment,[6] and the jury assessed eight years' confinement while rejecting appellant's request to be placed on community supervision. The trial court asked appellant whether there was any legal reason why a sentence should not be pronounced, and after appellant responded that there was no reason, the trial court sentenced him in accordance with the jury's verdict. After appellant unsuccessfully sought a new trial[7] on the ground that his sentence was disproportionate to his offense, he brought this appeal.

**Allegedly Excessive Punishment**

In his first point, appellant contends that the jury "erred by imposing an unfair and disproportionate sentence for the specific set of facts of this offense and the defendant of this case." Particularly, appellant contends that his eight-

---

[5]At trial, appellant stipulated to these prior convictions.

[6]The State reoffered the evidence that it had presented during the guilt phase of appellant's trial. Appellant called his cousin and a probation officer to testify.

[7]*See* Tex. R. App. P. 21.8(a), (c).

4

year sentence violates rights granted to him by the federal and state constitutions because he caused only a minor accident with no serious injuries, was cooperative with the police, produced a breath test that measured "below the legal limit," appeared to be sober once he arrived at the jail, and had not previously been convicted of a felony. *See* U.S. Const. amend VIII (prohibiting the imposition of cruel and unusual punishment); Tex. Const. art. I, § 13 (same).

The State contends that appellant forfeited his complaint about the excessiveness of his sentence because although he filed a motion for new trial that raised the excessiveness issue, he failed to present that motion to the trial court. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Landers v. State*, 402 S.W.3d 252, 254 (Tex. Crim. App. 2013); *Sample v. State*, 405 S.W.3d 295, 300 (Tex. App.—Fort Worth 2013, pet. ref'd). We should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g); *Sample*, 405 S.W.3d at 300. Preservation of error is a systemic requirement. *Gipson v. State*, 383 S.W.3d 152, 159 (Tex. Crim. App. 2012).

Complaints concerning the proportionality of a sentence to the circumstances of an offense are subject to forfeiture unless they are timely raised in the trial court. *See Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013)

("A sentencing issue may be preserved by objecting at the punishment hearing, or when the sentence is pronounced."); *Pollock v. State*, 405 S.W.3d 396, 405–06 (Tex. App.—Fort Worth 2013, no pet.) ("Pollock did not object to his sentence at the time it was imposed nor complain about it in a motion for new trial. We have held on numerous occasions that this type of claim must be preserved at the trial court level."); *see also Cisneros v. State*, No. 02-06-00103-CR, 2007 WL 80002, at *1 (Tex. App.—Fort Worth Jan. 11, 2007, pet. ref'd) (mem. op., not designated for publication) (collecting cases). And for purposes of preservation under rule of appellate procedure 33.1, a motion for new trial raises a sentencing issue only when the record shows that the motion was presented to the trial court. *See* Tex. R. App. P. 21.6; *Means v. State*, 347 S.W.3d 873, 874 (Tex. App.—Fort Worth 2011, no pet.); *Washington v. State*, 271 S.W.3d 755, 756 (Tex. App.—Fort Worth 2008, pet. ref'd) (mem. op.); *Thompson v. State*, 243 S.W.3d 774, 776 (Tex. App.—Fort Worth 2007, pet. ref'd).

Presentment requires a defendant to go beyond simply filing the motion for new trial with the clerk of the trial court; the presentment "must result in actual notice to the trial court and may be evidenced by the judge's signature or notation on a proposed order or by a hearing date set on the docket." *Burrus v. State*, 266 S.W.3d 107, 115 (Tex. App.—Fort Worth 2008, no pet.) (mem. op.). A mere notation on a docket sheet that a motion for new trial was filed is insufficient to establish presentment. *Id.*; *Cozzi v. State*, 160 S.W.3d 638, 641 n.5 (Tex. App.—Fort Worth 2005, pet. ref'd); *see Washington*, 271 S.W.3d at 756 ("The

6

term 'present' means the record must show that the movant for a new trial sustained the burden of actually delivering the motion for new trial to the attention or actual notice of the trial court.").

Here, appellant did not verbally raise any complaint about the excessiveness of the jury's punishment decision or the trial court's resulting sentence on the record at the end of the trial. And although the clerk's record establishes that appellant filed a motion for new trial in which he complained about his sentence, it does not show that he brought this motion to the attention of the trial court. Instead, the clerk's record contains only an unsigned and incomplete proposed "ORDER SETTING HEARING" on the motion, an unsigned and incomplete proposed order on the motion, a certificate of proceedings stating that a notice of appeal (but not a motion for new trial) had been filed, and a docket sheet entry that a motion for new trial had been filed. We conclude that none of these are sufficient to establish presentment. *See Washington*, 271 S.W.3d at 756; *Burrus*, 266 S.W.3d at 115.

Thus, because rule of appellate procedure 33.1(a) required appellant to complain about the excessiveness of his sentence to the trial court, because he had the opportunity to do so, and because the record establishes that he did not adequately and timely do so, we hold that he forfeited the complaint, and we overrule his first point. *See* Tex. R. App. P. 33.1(a).

**Evidentiary Sufficiency**

In his second point, appellant contends that the evidence is "factually insufficient" to support his conviction "due to a lack of evidence of intoxication." In appellant's discussion relating to factual sufficiency, in which he mainly relies on a 2000 decision from the court of criminal appeals,[8] he argues that we should review the evidence in a neutral light and conclude that it was so weak with respect to his intoxication as to be clearly wrong and manifestly unjust. He asks only for us to reverse his conviction and to remand this case for a new trial.

The court of criminal appeals, however, abolished factual sufficiency review over three years ago. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *see Howard v. State*, 333 S.W.3d 137, 138 n.2 (Tex. Crim. App. 2011). In the interest of justice, we will review the evidence to determine whether it is sufficient to prove appellant's intoxication under the *Jackson v. Virginia*[9] standard, which is the "only standard that [we] should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks*, 323 S.W.3d at 912.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to

---

[8] *See Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

[9] 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Winfrey*, 393 S.W.3d at 771; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Appellant does not contest that he was operating a motor vehicle in a public place; he contends only that the evidence is insufficient to show that he was intoxicated while doing so. *See* Tex. Penal Code Ann. § 49.04(a). Appellant was intoxicated if he had an alcohol concentration of .08 or more or if because of drinking alcohol, he lost the normal use of his mental or physical faculties. *Id.* § 49.01(2). Intoxication may be proved by a combination of symptoms that when taken individually do not necessarily prove intoxication. *See Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (noting that evidence of intoxication may include, among other things, bloodshot eyes, odor of alcohol, unsteady balance, and staggered gait).

Appellant concedes that the State offered "evidence as to intoxication." The record confirms appellant's concession. For example, as explained above, Obeta testified that while appellant was walking after the police arrived, he was staggering. Officer Johnson testified that appellant looked dazed and confused and appeared to have a slow reaction time. Appellant admitted at the scene and at the jail that he had been drinking alcohol, expressed that he should not have been driving, and opined that "he was intoxicated . . . or that he had had too much to drink." Appellant admitted at the jail that he had drunk several beers over the course of six or seven hours, including drinking some alcohol shortly before he crashed into Obeta's car. He also stated that his drinking alcohol "probably" contributed to the crash.

Appellant's eyes were red and bloodshot, and his breath smelled like alcohol. According to Officer Johnson, appellant failed all three of the standardized field sobriety tests that he took, indicating his intoxication.

Appellant's breath samples registered on the Intoxilyzer machine at alcohol concentrations of .071 and .072. At trial, Sarah Skiles, a forensic chemist, testified without objection that based on her training and experience, all people become intoxicated when they reach a .05 alcohol concentration. More specifically, Skiles testified that a person with an alcohol concentration of .071 loses the normal use of mental and physical faculties. Skiles explained that the introduction of alcohol affects a body's central nervous system as a depressant, meaning that alcohol "slows everything down." She also explained that alcohol is

10

dose dependent, meaning that the more alcohol a person consumes, the greater it will affect that person. Skiles testified that consuming alcohol affects thinking skills first, then fine motor skills, and then gross motor skills involving big muscles.

In answering hypothetical questions based on given facts that were similar to the evidence that the jury had heard about appellant's offense, Skiles opined that a person who had a .071 alcohol concentration at the time of giving a breath test could have had an alcohol concentration of .08 to .10 at the time of driving two hours earlier.

When the State asked Skiles whether a person sharing appellant's characteristics could have been under a .08 alcohol concentration at the time of driving when the person's breath measured at a .071 alcohol concentration two hours later, she said, "There would have had to have been a significant amount of alcohol still unabsorbed." Skiles explained that one way that alcohol can remain unabsorbed is if a person has food in the stomach. But the record does not establish that appellant had recently eaten food before his crash with Obeta; at the jail, appellant stated that he had last eaten food—a shrimp cocktail—at 4 p.m. on the day of the crash.

We recognize that some evidence raised inferences that the jury could have weighed against a finding of intoxication. For example, appellant performed

well on two field sobriety tests upon arriving at the jail.[10]  Also, appellant did not slur his speech and did not have trouble standing.  But the jury was the sole judge of the weight and credibility of the evidence.  *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768.  Thus, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the jury.  *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We must presume that the jury resolved any conflicting inferences in favor of the verdict and defer to that resolution.  *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

Viewing the evidence in the light most favorable to the verdict and deferring to the jury's implicit resolution of conflicting inferences in favor of a finding that appellant was intoxicated, we conclude that a rational jury could have found beyond a reasonable doubt that appellant was intoxicated while operating a motor vehicle in a public place.  *See* Tex. Penal Code Ann. § 49.04(a); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Tubb v. State*, No. 02-08-00400-CR, 2009 WL 3720166, at *2 (Tex. App.—Fort Worth Nov. 5, 2009, pet. ref'd) (mem. op., not designated for publication) (holding that evidence was sufficient to prove a defendant's intoxication when it revealed that the defendant smelled of alcohol, had watery and bloodshot eyes, admitted to drinking alcohol,

---

[10]Officer Johnson opined that a better second performance on field sobriety tests is common because "the gravity of what has taken place sets in" to arrestees.

and failed standardized field sobriety tests).  We therefore hold that the evidence is sufficient to support appellant's conviction and overrule his second point.

## Conclusion

Having overruled appellant's points, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 20, 2014

13