# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH
### NO. 02-13-00600-CR


JOSHUA ROLSTON MAJORS A/K/A                          APPELLANT
JOSHUA ROSTON MAJORS

V.

THE STATE OF TEXAS                                   STATE

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
TRIAL COURT NO. CR12459

----------

## MEMORANDUM OPINION[1]

----------

After the trial court denied his motion to suppress, Appellant Joshua Rolston Majors pled guilty to possession of more than four grams but less than two hundred grams of a controlled substance—methamphetamine—with intent to deliver, preserving the denial of his motion to suppress for appeal.  He pled true

---

[1]*See* Tex. R. App. P. 47.4.

to both enhancement paragraphs. A jury convicted him and assessed his punishment at sixty years' confinement, and the trial court sentenced him accordingly. In a single point, Appellant complains, "The admission of numerous points of evidence at punishment resulted in harmful, reversible error that affected Appellant's substantial rights." Because his point on appeal does not comport with his arguments raised in the trial court, we overrule his sole point and affirm the trial court's judgment.

During the night shift, Hood County Sheriff's Deputy Gary Clark was at the Tiger Mart gas station in Cresson, Texas, watching a vehicle belonging to Michael Reddell. Three weeks earlier, Deputy Clark had received information from someone he had arrested for possession of methamphetamine that Reddell was transporting methamphetamine from Fort Worth to Hood County and selling it out of the Tiger Mart.

As Deputy Clark watched the gas station, he saw a pickup truck pull into the parking lot. Deputy Clark observed Reddell's vehicle back out of its parking space and pull alongside the pickup at the other end of the parking lot, away from the gas pumps. The vehicles stopped next to each other for approximately two to three minutes with the driver's-side windows aligned. Deputy Clark believed that the two drivers were speaking to each other. Reddell's vehicle then left the gas station and traveled westbound on Highway 377 toward Granbury. Approximately one minute later, the pickup left the gas station and also headed westbound on Highway 377 toward Granbury.

Deputy Joshua Lane, a certified drug dog handler, was working with his drug dog that day, and he had parked his marked patrol car approximately one block away from the gas station. Deputy Lane followed Reddell's vehicle after it left the gas station, the pickup traveled behind Deputy Lane, and Deputy Clark followed the pickup.

Deputy Clark testified during the suppression hearing that he had followed the pickup to get probable cause to make a traffic stop. Deputy Clark also testified that he had seen the pickup weave within its lane and drive onto the improved shoulder two to three times and that, in his opinion, the pickup had been following Deputy Lane's unit too closely. Deputy Clark suspected that the driver might be impaired and also that the driver might have been involved in a drug transaction at the gas station.

Based on all of his observations, Deputy Clark stopped the pickup at 1:59 a.m. Deputy Clark approached the truck from the passenger side and observed Appellant sitting in the driver's seat. He was the sole occupant. While speaking with Appellant, Deputy Clark noticed a black bag sticking out from under the driver's seat by Appellant's right leg.

Appellant told Deputy Clark that he had been arrested on a weapons charge in another county. Deputy Clark asked Appellant to step out of the pickup. Before getting out, Appellant reached down and shoved the black bag under the seat. Deputy Clark patted Appellant down for weapons but did not locate anything.

Deputy Clark then went to his patrol car to check Appellant's driver's license and criminal history and also called Deputy Lane, who was not far away, and asked him to come to his location with his drug dog. Deputy Clark then walked back to Appellant and asked him about the black bag under the driver's seat. Appellant denied any knowledge of the bag and refused consent to search his pickup in response to Deputy Clark's request.

By this time, according to Deputy Clark, it was approximately 2:06 a.m., and Deputy Lane had arrived with his drug dog. Deputy Clark testified that approximately six to seven minutes had elapsed between his initiation of the traffic stop and Deputy Lane's arrival.

Deputy Lane used his drug dog to conduct an open-air sniff around Appellant's pickup. The drug dog signaled an alert at the driver's-side door. Deputy Clark testified that he had explained to Appellant that the drug dog had alerted and that the alert gave the deputy probable cause to search the pickup. Deputy Clark testified that he had then asked Appellant if there was anything illegal in the pickup and that Appellant had replied, "[Y]es."

Deputy Clark read Appellant his *Miranda* warnings,[2] and Appellant agreed to speak with him. Appellant told Deputy Clark that methamphetamine was in the pickup. Deputy Clark then handcuffed Appellant.

---

[2]*See Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 1630 (1966).

4

Deputy Clark searched Appellant's pickup and located the black bag that he had seen earlier. Inside it, Deputy Clark found items that he testified were related to the sale of methamphetamine: (1) several Ziploc baggies containing methamphetamine; (2) digital scales; (3) empty Ziploc baggies; (4) a glass smoking pipe with white powder residue; (5) a straw with white powder residue; and (6) a spoon.

Appellant was placed under arrest for possession of methamphetamine at 2:12 a.m. The return on Appellant's driver's license came back at 2:11 a.m. and showed that his driver's license was invalid. The entire incident lasted approximately thirteen minutes.

In a single point, Appellant complains that the admission of "[a]ll statements by Investigator Clark and other employees of the Hood County Sheriff that related to any occurrence after the initial traffic stop, and . . . [a]ll physical evidence obtained by the Hood County Sher[]iff after the initial traffic stop" was reversible error as the evidence "should have been suppressed as fruit of the poisonous tree." Appellant had argued in his motion to suppress that these items were the fruits of his unlawful arrest, made pursuant to neither warrant, probable cause, nor any other lawful authority in violation of state and federal constitutions, as well as article 38.22 of the code of criminal procedure.

At the hearing on the motion to suppress, Appellant reiterated these grounds, emphasizing the vague nature of the "following too closely" allegation as a traffic offense committed in the officer's presence. He also argued that the

dog sniff that is only 67 to 68 percent reliable would not provide sufficient probable cause to support a warrant and, equally, is insufficient to support a warrantless search. He did not argue at any time to the trial court that the dog sniff unreasonably prolonged the detention or exceeded the scope of the detention. He raises those complaints for the first time on appeal. Appellant specifically limits his complaints in his brief, arguing that

> the evidence obtained by the officer was the fruit of an unreasonable search because the search exceeded the scope of the initial detention. Appellant was stopped by Investigator Clark for following too closely. Investigator Clark asked him to step out of the car, and requested permission to search the vehicle. Appellant denied consent. Investigator Clark then requested a K-9 unit to do a drug sniff of the exterior of the vehicle. The scope of a routine traffic stop, without more, does not include a K-9 unit doing a drug sniff of the exterior of the vehicle. Investigator Clark violated Appellant's Constitutional rights by continued detention without articulable facts to justify the continued detention. The search was unjustified, and illegal.
>
> The K-9 drug sniff of Appellant's vehicle exceeded the scope of the traffic stop. The K-9 drug sniff was an unlawful search. The evidence discovered in course of the search should have been suppressed as fruit of an unlawful search. (Citations omitted.)

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.[3] Further, the trial court must have ruled on the request,

---

[3]Tex. R. App. P. 33.1(a)(1); *Landers v. State*, 402 S.W.3d 252, 254 (Tex. Crim. App. 2013); *Sample v. State*, 405 S.W.3d 295, 300 (Tex. App.—Fort Worth 2013, pet. ref'd).

6

objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule.[4]

The complaint made on appeal must also comport with the complaint made in the trial court, or the error is forfeited.[5] To determine whether the complaint on appeal comports with that made at trial, we consider the context in which the complaint was made and the parties' shared understanding at that time.[6]

Because Appellant's complaints that the dog sniff unlawfully prolonged his detention and exceeded the scope of the detention were first raised on appeal, they are untimely and not preserved for appellate review. Further, because these appear to be the only complaints Appellant raises on appeal, we overrule his sole point and affirm the trial court's judgment.

---

[4]Tex. R. App. P. 33.1(a)(2); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011) (*Pena II*).

[5]*Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (*Pena I*) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial.").

[6]*Clark*, 365 S.W.3d at 339; *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009); *Pena I*, 285 S.W.3d at 464.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

GABRIEL, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 7, 2014