

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00051-CR

_____

DAVID GENE CHRISTENSEN, Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CR21856

_____

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

## I. Introduction

Appellant David Gene Christensen pleaded guilty to a six count indictment charging him with aggravated sexual assault of a child younger than fourteen. *See* Tex. Penal Code Ann. § 22.021(a)(2)(B). There was no plea bargain, and after a punishment hearing, the trial court sentenced Christensen to forty years' confinement.

On appeal, Christensen complains that his forty-year sentence is grossly disproportionate to his crime and therefore violates the Eighth Amendment to the United States Constitution. He also claims that he received ineffective assistance of counsel because his attorney failed to object to the sentence assessed by the trial court. Because Christensen forfeited his Eighth Amendment claim and because he cannot show that his attorney was ineffective, we affirm.

## II. Background

M.W., thirty-four years old at the time of trial, was sexually abused as a child by Christensen, her father.

M.W. lived with Christensen from the time she was two years old until age eighteen. M.W. testified that Christensen first molested her when she was six. Christensen was driving M.W. home and asked her to perform oral sex on him. He ejaculated in her mouth.

Another occasion took place in Christensen's garage. While Christensen's then-wife was in the kitchen making dinner, Christensen asked M.W. to accompany

him to the garage. Inside a small tool closet, Christensen had M.W. get on her knees and perform oral sex. Again he ejaculated.

According to M.W., these events—and events like them—took place almost daily for a number of years.

The last act of abuse that M.W. testified about occurred before she turned fourteen. Christensen asked M.W. to pull down her pants and bend over the end of a bed. He tried to put his penis into M.W.'s anus, but she cried out and he stopped. M.W. went to her room. The next day, Christensen again called her into his room, but this time he said that he was sorry and that he would not "do it anymore." The family moved to Colorado not long after this.

In early 2019, M.W. decided that she did not want anything more to do with Christensen. This was occasioned by what M.W. saw as Christensen's "grooming" of her own daughter—inappropriate and constant requests for kisses and hugs. M.W. and her husband confronted Christensen, telling him that they wanted nothing more to do with him.

Several weeks later, M.W. went to the Wise County Sheriff's Office and made a report detailing Christensen's actions. An investigator with the District Attorney's Office set up a recording device and, with M.W.'s permission, recorded a telephone call between her and Christensen. During the call, Christensen admitted both to having oral sex with M.W. several times and contacting his penis with her anus.

3

Further, the investigator testified about texts between Christensen and M.W.'s mother in which he admitted sexually abusing M.W. and other girls.

Christensen's sexual misconduct was not limited to M.W.; indeed, he has a pattern of inappropriate behavior towards other children, including his stepdaughter, M.R. When she was fifteen or sixteen, Christensen walked into her room and climbed into bed with her. She told Christensen he was in the wrong room, but he just leaned on top of her, put his face close to hers and said, "I know what room I'm in." M.R. was angry and shoved him off her. The next morning she told her mother; they both left, and her mother divorced Christensen soon after.

Another of Christensen's victims was his half-sister who is ten years younger than he is. She testified that Christensen abused her when she was between the ages of three and seven.

In addition to his acts of child abuse, Christensen demanded oral sex from M.W.'s mother as a condition to her being allowed to visit M.W. and their other children.

### III. Discussion

Christensen raises two points on appeal. First, he claims that the trial court's decision to sentence him to forty years in prison violates the principles of proportionality embodied in the Eighth Amendment. Second, he claims that his attorney at trial rendered ineffective assistance by failing to object to his sentence.

4

## A. Christensen's Eighth Amendment Claim is Unpreserved

Christensen made no objection or complaint to the trial court about the length of his sentence. And as he concedes, a defendant's claim that he suffered a disproportionate sentence must be raised in the trial court at the time the sentence was imposed or, at best, in a motion for new trial. *See Sample v. State*, 405 S.W.3d 295, 304–05 (Tex. App.—Fort Worth 2013, pet. ref'd); *Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd). Christensen argues that "nothing in the rules precludes taking notice of fundamental errors affecting substantial rights," but he provides no support for the assertion that sentencing disproportionality is exempt from the normal rules for preserving error. In any event, the law does not support such a claim. *See Poss v. State*, No. 02-12-00010-CR, 2013 WL 2435536, at *2 (Tex. App.—Fort Worth June 6, 2013, pet. ref'd) (mem. op., not designated for publication) (stating that excessive punishment claim is not so fundamental as to relieve litigant of necessity to object (citing *Trevino v. State*, 174 S.W.3d 925, 927–28 (Tex. App.—Corpus Christi–Edinburg 2005, pet. ref'd))).

Christensen's first point is overruled.

## B. Christensen's Ineffective Assistance of Counsel Claim

Christensen also complains that his trial attorney rendered ineffective assistance by failing to object to the disproportionality of his sentence.

### 1. Ineffective Assistance Standard

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. Const. amend. VI. To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The record must affirmatively demonstrate that the claim has merit. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

*Strickland*'s prejudice prong requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial—that is, a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, an appellant must show a reasonable probability that the proceeding would have turned out differently without the deficient performance. *Id.* at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. We must ultimately focus on examining the fundamental fairness of the proceeding in which the result is being challenged. *Strickland*, 466 U.S. at 696, 104 S. Ct. at 2069.

Christensen argues that "there is a reasonable probability that [his] sentence would have been less severe but for counsel's failure [to object to the severity of his

punishment]." Accordingly, Christensen must show that the trial court would have committed error in overruling his objection. *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996). We must therefore analyze whether his sentence was truly disproportionate to his crime.

## 2. Disproportionality Under the Eighth Amendment

Generally, a sentence within the statutory range of punishment for an offense will not be held to be cruel or unusual. *Dale v. State*, 170 S.W.3d 797, 799 (Tex. App.—Fort Worth 2005, no pet.) (citing *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973)). Indeed, a trial court's discretion to impose any sentence within the prescribed statutory range is essentially unfettered. *Ex parte Chavez*, 213 S.W.3d 320, 323 (Tex. Crim. App. 2006). However, a narrow exception to this general rule exists: the Eighth Amendment prohibits noncapital punishment within the statutory limits if the sentence is grossly disproportionate to the offense. *Graham v. Florida*, 560 U.S. 48, 59–60, 130 S. Ct. 2011, 2021–22 (2010); *Harmelin v. Michigan*, 501 U.S. 957, 997–1001, 111 S. Ct. 2680, 2702–05 (1991) (Kennedy, J., concurring in part and concurring in judgment); *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016). The gross-disproportionality exception occurs "only in the exceedingly rare or extreme case." *Simpson*, 488 S.W.3d at 322–23.

Texas courts have followed the Fifth Circuit's analysis for addressing Eighth Amendment proportionality complaints. *McGruder v. Puckett*, 954 F.2d 313 (5th Cir. 1992). This requires that we first conduct a threshold comparison of the gravity of

the offense underlying the current conviction, as well as the offenses underlying any prior convictions, against the severity of the sentence. *Id.* at 316. The test is whether the sentence is grossly disproportionate to the gravity of the offenses upon which the sentences are based. *See Winchester v. State*, 246 S.W.3d 386, 390 (Tex. App.—Amarillo 2008, pet. ref'd). We consider the gravity of the offense in light of the harm caused or threatened to the victim or society and the culpability of the offender. *Solem v. Helm*, 463 U.S. 277, 291–92, 103 S. Ct. 3001, 3010–11 (1983).

In the rare case in which this threshold analysis indicates gross disproportionality, we proceed to then compare the defendant's sentence with those received by similar offenders in this jurisdiction and with those imposed for the same crime in other jurisdictions. *Simpson*, 488 S.W.3d at 323; *see also Solem*, 463 U.S. at 296–300, 103 S. Ct. at 3012–15 (applying steps two and three).

### 3. Analysis

Christensen was convicted of aggravated sexual assault of a child. The statutory range of punishment for this first degree felony is five to ninety-nine years or life and a fine not to exceed $10,000. *See* Tex. Penal Code Ann. §§ 12.32, 22.021(e). The trial court assessed Christensen a sentence of forty years—a duration not at the lower end of the range, to be sure, but neither was it the maximum term. As for the seriousness of the offense, "[b]y making the aggravated sexual assault of a child a first degree felony, the legislature has identified the crime as among the most heinous acts addressed in the penal code." *Bailey v. State*, Nos. 14-01-00486-CR, 14-01-00487-CR, 2002 WL 122295,

8

at *2 (Tex. App.—Houston [14th Dist.] Jan. 31, 2002, no pet.) (not designated for publication). Indeed, sexually assaulting a child is a serious offense that harms not only the victim but also society, which has a vested interest in protecting its most vulnerable members. *See Wade v. State*, 02-21-00206-CR, 2023 WL 1859797, at *3 (Tex. App.—Fort Worth Feb. 9, 2023, no pet.) (mem. op., not designated for publication).

The evidence at trial demonstrates that Christensen's victim suffered significant harm. First, his actions constituted an ongoing sexual abuse. Christensen began abusing M.W. at age six and continued until she was at least fourteen; this occurred "on almost a daily basis." The regularity of Christensen's ongoing sexual abuse undermines any notion that a sentence of forty years was "grossly disproportionate." *See Dale*, 170 S.W.3d at 800 (concluding that fifty-year sentence for aggravated sexual assault not grossly disproportionate where the offenses occurred with "regularity").

Christensen is M.W.'s biological father. Christensen raised her and lived in the home with her until she turned eighteen. She was, in fact, dependent on Christensen because her mother was not present in the home. The fact that Christensen was in a position of trust and authority lends a particularly grievous nature to his crimes. *See Baletka v. State*, Nos. 09-04-00180-CR, 09-04-00181-CR, 2005 WL 387662, at *2 (Tex. App.—Beaumont Feb. 16, 2005, no pet.) (mem. op., not designated for publication). Further, the victim suffered psychological trauma, including adverse relationships with others and a "turbulent" relationship with her sister. *See Mathews v. State*, 918 S.W.2d 666, 669 (Tex. App.—Beaumont 1996, pet. ref'd) (emphasizing the potential for

"mental, emotional, and physical scarring" of a young sexual abuse victim in finding the defendant's thirty-year sentence to be appropriate).

Similarly, the fact that Christensen enforced silence from M.W. by threatening that she would lose everything and be separated from her sister underlines the lengths to which Christensen would go to continue committing his crimes. These threats, coupled with the ongoing nature of Christensen's crimes, indicate his culpability and demonstrate that his actions were deliberate. *See Erickson v. State*, No. 02-19-00287-CR, 2020 WL 4907364, at *5 (Tex. App.—Fort Worth Aug. 20, 2020, pet. ref'd) (mem. op., not designated for publication) (noting defendant's blameworthiness as part of "methodical and repetitive" nature of criminal conduct).

Finally, Christensen's behavior with other members of his household also demonstrates that a forty-year sentence for aggravated sexual assault was not grossly disproportionate. Christensen forced his own half-sister to engage in oral sex with him, and he threatened her if she ever told anyone in the family. The half-sister described Christensen as "manipulative," "coercive," and a "great groomer." Christensen also climbed into bed with his teenaged stepdaughter. When she told him he was in the wrong room, Christensen did not seem to care. M.W. was also aware of the fact that Christensen had begun to groom her own daughter. This is what led her to outcry about Christensen's crimes.

Christensen's sexual misconduct was not limited to children. The ex-wife of Christensen's half-brother testified that, while she was dating the half-brother and was

at Christensen's house, Christensen grabbed her hand and held it on his penis. Also, M.W.'s mother testified that, as a condition to allow her to visit her children after their divorce, Christensen would routinely force her to perform oral sex on him.

In light of the gravity of aggravated sexual assault, the harm caused to M.W., and Christensen's culpability, we cannot say that a forty-year sentence is grossly disproportionate. The mere fact that Christensen admitted to his offenses and has no prior record does not render the trial court's sentence grossly disproportional. Because we have found no gross disproportionality, it is unnecessary to evaluate the sentences under the two remaining factors of the *Solem* test. *See Bolar v. State*, 625 S.W.3d 659, 666 (Tex. App.—Fort Worth 2021, no pet.). Accordingly, the record does not show that the result of the proceedings would have been different had trial counsel presented a gross-disproportionality complaint. We overrule Christensen's second point.

## IV. Conclusion

Having overruled Christensen's two points, we affirm the judgment of the trial court.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 20, 2023