

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00301-CR

MICHAEL L. JORDAN                                              APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

------------

FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

In two issues, Appellant Michael L. Jordan appeals his conviction of felony driving while intoxicated (DWI). We affirm.

## II. Procedural Background

The State indicted Jordan for operating a motor vehicle in a public place while intoxicated on or about August 29, 2010, alleging the following two

[1]*See* Tex. R. App. P. 47.4.

convictions to support the felony DWI charge: a January 24, 1986 DWI conviction in the County Court at Law of Taylor County, Texas, in cause number 68,389, and an April 5, 1993 DWI conviction in County Criminal Court No. 10 of Tarrant County, Texas, in cause number 0487825.[2] A jury found Jordan guilty as charged in the indictment and assessed his punishment at ten years' confinement; the trial court suspended the sentence and placed Jordan on community supervision for ten years. This appeal followed.

### III. Admission of Evidence

In two issues, Jordan argues that the trial court abused its discretion by admitting into evidence State's Exhibit 26 and by allowing publication of his blood-test results to the jury. We give great deference to the trial court's discretion, and its evidentiary rulings should not be reversed as long as they are within the "zone of reasonable disagreement." *See Salazar v. State*, 38 S.W.3d 141, 151 (Tex. Crim. App.), *cert. denied*, 534 U.S. 855 (2001); *see also Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g) (setting out abuse-of-discretion standard).

### A. State's Exhibit 26

In his first issue, Jordan argues that the trial court abused its discretion by admitting State's Exhibit 26, a "purported judgment against [him] for a 1986 DWI

---

[2]These two prior convictions were elements of the offense that the State had to prove to enhance the charged offense to a third-degree felony. *See* Tex. Penal Code Ann. § 49.09(b) (West 2011 & Supp. 2013).

conviction in Taylor County, Texas," under the premise that it was a self-authenticating document under rule 902(4) because it did not comply with the code of criminal procedure's fingerprint and representation-by-counsel requirements.[3] He contends that the State had the burden "to provide a properly authenticated document that complied with the procedures mandated in the Code" and also appears to incorporate a sufficiency argument into this issue, complaining that "[o]ther than 'Michael L. Jordan,' there is not one single independent piece of evidence on the judgment that links him to the offense alleged," i.e., no fingerprints, witness, date of birth, confession, sworn statement, social security number, or photograph.

The trial court held a hearing outside the jury's presence with regard to State's Exhibit 26's admissibility. Jordan first objected to the admission of State's Exhibit 26 based on the lack of a fingerprint, any other evidence to link the conviction to him, and the judgment's lack of identifying characteristics. He also pointed out that the 1986 judgment and sentence states that Jordan, "together with JIM SMART, defendant's attorney, (counsel waived). Although the trial court expressed its concern that this second point might present a jurisdictional issue,

---

[3]Although Jordan also complains that the trial court abused its discretion by admitting State's Exhibit 25, a redacted copy of the certified DPS driving record, he does not explain why this exhibit was inadmissible except to argue that it was linked to State's Exhibit 26, which he argues is a facially deficient judgment. *See* Tex. R. App. P. 38.1(i). Based on our conclusion below that the trial court did not abuse its discretion by admitting State's Exhibit 26, we overrule this portion of Jordan's first issue.

3

it ultimately decided that State's Exhibit 26 was admissible under rule 902 and that it was for the jury to decide the weight and credibility of the evidence sufficient to link the conviction to Jordan, relying in part on *Nowell v. State*, No. 02-10-00479-CR, 2011 WL 4712009 (Tex. App.—Fort Worth Oct. 6, 2011, no pet.) (mem. op., not designated for publication).

When, as here, proof of a prior conviction is a jurisdictional element, the fact of the prior conviction, including the accused's identity, must be proven beyond a reasonable doubt. *See Zimmer v. State*, 989 S.W.2d 48, 50 (Tex. App.—San Antonio 1998, pet. ref'd). To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that a prior conviction exists and that the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007); *Beck v. State*, 719 S.W.2d 205, 210 (Tex. Crim. App. 1986).

Under rule of evidence 902(4), a document is admissible into evidence as a self-authenticating document if the document is a certified copy of a public record. Tex. R. Evid. 902(4); *see also* Tex. R. Evid. 902(1)–(3); *Flowers*, 220 S.W.3d at 922 ("Rule 902 of the Texas Rules of Evidence explicitly allows for the self-authentication of certified copies of public records[.]"). State's Exhibit 26 is a certified copy of a January 24, 1986 judgment and sentence from the County Court at Law of Taylor County, Texas, pertaining to "Michael L. Jordan" in cause number 68,389 for DWI, and Jordan does not argue that there are any flaws in

4

the certification or that the document itself is a forgery.[4]  *See Bruton v. State*, 428

S.W.3d 865, 873–75 (Tex. Crim. App. 2014) (explaining that rule 902, along with

---

[4]In Jordan's appellate brief, although he states that he is "[m]indful of the *Nowell* case referenced in the record," he expressly declines to "venture into the minefield of 'void' versus 'voidable' convictions," despite his contention on appeal that there was no admissible evidence to prove that he had been represented by counsel in 1986.  *Cf. Gaddy v. State*, No. 02-09-00347-CR, 2011 WL 1901972, at *1 (Tex. App.—Fort Worth May 19, 2011) (addressing appellant's contention that the trial court erred by admitting into evidence void DWI convictions that could not support his felony DWI conviction), *judgm't vacated*, No. PD-1118-11, 2012 WL 4448757 (Tex. Crim. App. Sept. 26, 2012) (not designated for publication). In *Nowell*, the appellant moved to quash his felony DWI indictment, arguing that one of the two prior misdemeanor DWI convictions alleged by the State was "void on its face" because the statutory procedural requirements in effect in 1993 in code of criminal procedure article 1.13 had not been met.  2011 WL 4712009, at *1.  We affirmed the trial court's judgment denying the motion, relying on *Ex parte McCain*, 67 S.W.3d 204, 209–11 (Tex. Crim. App. 2002), in which the court of criminal appeals held that a violation of article 1.13(c) does not render a conviction void for enhancement purposes.  *Id.* at *1–2; *see also Sample v. State*, 405 S.W.3d 295, 301 (Tex. App.—Fort Worth 2013, pet. ref'd) (reviewing denial of motion to quash).  In *Sample*, the appellant moved to quash his felony DWI indictment, alleging that one of the prior DWIs was void because at the time he pleaded guilty in that case, he had not waived his rights to counsel or jury trial. 405 S.W.3d at 301.  The trial court held a hearing on the motion to quash to determine whether the appellant had waived his rights before he pleaded guilty, determined that he had, and denied the motion, and we overruled the appellant's complaint on this issue, concluding that the trial court had not abused its discretion.  *Id.* at 301–03.  Jordan did not file a motion to quash the indictment in this case.

Further, although Jordan argues that the absence of a fingerprint on the 1986 judgment is "[t]he final and most troubling aspect of State's Exhibit 26," the fingerprint requirement for misdemeanor offenses punishable by confinement in jail was not added to code of criminal procedure article 38.33 until 1987.  *See* Act of May 21, 1987, 70th Leg., R.S., ch. 721, § 1, 1987 Tex. Gen. Laws 2596, 2596–97 (amended 1989 and 1991) (current version at Tex. Code Crim. Proc. Ann. art. 38.33 (West 2005)); *see also* Act of May 22, 1989, 71st Leg., R.S., ch. 603, § 2, 1989 Tex. Gen. Laws 1995, 1995–96 (amending article 42.01 to include "22. The defendant's fingerprint taken in accordance with Article 38.33 of this code.") (amended 1991, 1993, 1995, 1997, 1999, 2005, 2009, 2011, and 2013)

other authentication rules, is designed to ensure that a document that is admitted is authentic rather than a forgery and that "certified as correct" in rule 902(4) means that the copy is certified as a correct copy of the governmental record; the certification "need not attest to the truth of the matters contained in that governmental record"). Because we conclude that the trial court did not abuse its discretion by admitting State's Exhibit 26 under rule 902(4), we overrule this part of Jordan's first issue.

We next address whether the State adequately linked the conviction in State's Exhibit 26 to Jordan, and whether the evidence as a whole was sufficient to support Jordan's felony DWI conviction.[5] A certified copy of a judgment is not normally sufficient, standing alone, to link a defendant to a prior conviction. *Beck*, 719 S.W.2d at 210. Rather, the State has the burden of proving that link with independent evidence showing that the defendant is the same person

(current version at Tex. Code Crim. Proc. Ann. art. 42.01, § 1(23) (West 2006 & Supp. 2013)). Even if Jordan's argument that the "plain deficiencies on the face of the judgment" render the evidence insufficient has any bearing on the admissibility of State's Exhibit 26 under rule 902, he directs us only to code of criminal procedure articles 42.01, 1.13(a), and 38.33 without any reference to or discussion of any applicable case law. Therefore, we overrule this portion of his first issue as inadequately briefed. *See* Tex. R. App. P. 38.1(i) (requiring a brief to contain a clear and concise argument for the contentions made, with appropriate citations to authorities).

[5]In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

named in the prior conviction. *See id.* The State may prove both that a prior conviction exists and that the defendant is linked to that conviction in a number of different ways. *Flowers*, 220 S.W.3d at 921–22. "Regardless of the type of evidentiary puzzle pieces the State offers to establish the existence of a prior conviction and its link to a specific defendant, the trier of fact determines if these pieces fit together sufficiently to complete the puzzle." *Id.* at 923. If the two elements can be found beyond a reasonable doubt, then the various pieces used to complete the puzzle are necessarily legally sufficient to prove a prior conviction. *Id.*

Deputy Paul Rojas of the Tarrant County Sheriff's Department fingerprinted Jordan a few days before trial and matched those prints to the certified copy of the criminal docket sheet from the 1993 DWI conviction in Tarrant County Criminal Court No. 10, contained in State's Exhibit 22.[6] Deputy Rojas testified that State's Exhibit 24 was a certified record of a Texas driver's license history and that State's Exhibit 25 was a redacted copy of the same record.

The trial court admitted State's Exhibit 25, the redacted copy of the Texas Department of Public Safety certified abstract record for "Michael Larence Jordan" containing his driver's license number, date of birth, photograph, and fingerprints. When Deputy Rojas fingerprinted Jordan, he reviewed Jordan's

---

[6]Deputy Rojas testified that the fingerprint in State's Exhibit 23, the Tarrant County judgment of conviction, was not a good print.

7

driver's license and obtained the driver's license number, which he said was the same as listed on State's Exhibits 24 and 25 and showed the same first, middle, and last name and date of birth as on those exhibits. Deputy Rojas testified that the photograph in State's Exhibit 25 was a photograph of Jordan.

State's Exhibit 25 also listed the January 24, 1986 conviction for DWI in the Taylor County Court, including the same cause number, same charge, same county of conviction, same first and last name, and same conviction date as listed in State's Exhibit 26, and the April 5, 1993 conviction for DWI in the Tarrant County Court, including the same cause number, same charge, same county of conviction, same full name of the person convicted,[7] and same conviction date as listed in State's Exhibit 23. *See, e.g., Flowers*, 220 S.W.3d at 920–22, 925 (holding that a certified computer printout that showed the prior DWI conviction, along with defendant's date of birth, address, social security number, and other personal descriptors, which was from the Dallas County clerk, custodian of the original judgment for the prior DWI conviction, coupled with driver's license record that set out the same personal information, an entry about the Dallas County DWI, and a photograph that could be used to compare to defendant, was sufficient to prove defendant's prior DWI conviction); *Turnbow v. State*, No. 02-09-00438-CR, 2010 WL 4486223, at *4–6 (Tex. App.—Fort Worth Nov. 10, 2010, no pet.) (mem. op., not designated for publication) (holding that evidence was

---

[7]State's Exhibit 23, the certified copy of the Tarrant County conviction, lists Jordan's full name.

8

sufficient to support finding prior DWI conviction when, even though the judgment and order of probation contained no fingerprints, the order modifying probation contained the same cause number as the judgment and included a fingerprint that was identified as appellant's at trial, and the certified DPS driving packet referenced the conviction with a partial docket number that matched the last five digits and contained the driver's photograph, which the jury could compare to appellant).

Our sufficiency standard of review gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011). The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768. Here, the jury could have found beyond a reasonable doubt that Jordan was the same Jordan in State's Exhibit 26, the January 24, 1986 Taylor County DWI conviction, based on comparing him to his photograph in the DPS record that listed the same specifics of the Taylor County DWI conviction as found in State's Exhibit 26. *See Dorsett v. State*, 396 S.W.2d 115, 116 (Tex. Crim. App. 1965) (overruling appellant's complaint that his driver's license record was insufficient to identify him as the person previously convicted of DWI when complaint, information, and judgment in prior DWI conviction matched DPS record that contained Dorsett's physical description and a listing of the same

9

prior DWI conviction matched by date, county, charge, and cause number and the jury had the opportunity to observe him and determine by comparison to his description whether he was the same person who had been previously convicted); *Reese v. State*, 273 S.W.3d 344, 347–48 (Tex. App.—Texarkana 2008, no pet.) (holding jury could have properly concluded that Reese was the same person who had been previously convicted of boating while intoxicated when, despite judgment in cause number 4222 listing only his first and last name with no further identifying information, there was additional evidence to link him to the conviction: his probation supervisor testified about Reese's other prior DWI conviction, the judgment of which listed that Reese had pleaded "true" to having previously been convicted in cause number 4222 and been adjudicated guilty in that case, and Reese's signatures on the community supervision conditions in cause number 4222, the other conviction's judgment, and the community supervision data sheet in the other conviction were admitted in evidence); *see also Orsag v. State*, 312 S.W.3d 105, 118–19 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (holding evidence sufficient to establish prior convictions when jury had appellant's signature to compare with the signatures on the certified judgments of conviction, as well as testimony by his fiancée pertaining to the signatures and convictions); *cf. Reyes v. State*, 394 S.W.3d 809, 811 (Tex. App.—Amarillo 2013, no pet.) (holding State failed to prove 1989 DWI conviction when judgment did not contain fingerprints and the only information linking appellant with that conviction was limited to the information contained on the face

10

of the judgment); *Prihoda v. State*, 352 S.W.3d 796, 807, 810 (Tex. App.—San Antonio 2011, pet. ref'd) (holding evidence insufficient to link appellant to prior conviction when the only evidence was his full name on the prior judgment of conviction, his signature on that judgment, and some vague testimony by arresting officer that he had checked appellant's driver's license history and became aware of the prior DWI). We overrule the remainder of Jordan's first issue.

## B. Suppression

In his second issue, Jordan complains that the trial court abused its discretion by allowing his blood-test results to be published to the jury in violation of the hearsay rule and the Confrontation Clause. Assuming, without deciding, that the trial court erred by admitting the blood-test results, we will review the record to determine whether the error was harmless beyond a reasonable doubt.[8] *See* Tex. R. App. P. 44.2(a).

---

[8]We review constitutional error for whether a "reasonable possibility" exists that the error might have contributed to the conviction and try to calculate as much as possible the probable impact on the jury in light of the existence of other evidence, taking into account any and every circumstance apparent in the record that logically informs our decision and evaluating the record in a neutral, impartial, and even-handed manner. *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999); *Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997); *see also Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011); *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001); *Harris v. State*, 790 S.W.2d 568, 586 (Tex. Crim. App. 1989), *disagreed with in part on other grounds by Snowden*, 353 S.W.3d at 821–22.

11

With regard to blood evidence, the prosecutor mentioned during voir dire that jurors might expect to hear some evidence about blood or breath or to see in-car footage and explained that there are circumstances under which police can obtain a mandatory blood sample before he asked whether anyone had any strong feelings or thoughts about blood or breath tests. Jordan reminded the jury that regardless of whether there was a video or a blood test, it was up to the jury to consider the evidence or lack thereof.

During his opening statement, the prosecutor told the jury that after Jordan was pulled over on suspicion of drunk driving, the police administered field sobriety tests and concluded Jordan was intoxicated, and then, after running his name and record, determined there was information indicating that a mandatory blood draw should be conducted. The prosecutor also told the jurors that they would hear testimony from Dr. Johnson, a forensic scientist, who would explain what the blood test results might mean. Jordan responded that he expected the evidence to show that the blood sample was not stored properly.

Arlington Police Officers Dylan Eckstrom and Christie King,[9] of the police department's DWI unit, testified that while they were on patrol at around 2 a.m. on August 29, 2010, they noticed a Ford dually pickup truck drift within its own lane, fail to maintain a single lane three times, and almost strike another vehicle twice. Officer King testified that there were a lot of bars in the area where they

---

[9]Officer King had a different last name at the time of Jordan's arrest.

saw the truck and that it was common knowledge that those bars close at 2 a.m. They initiated a traffic stop of the truck, first activating the emergency lights on the patrol car and then—after the driver failed to respond for three or four blocks—activating the patrol car's airhorn.

Jordan, the truck's driver, drove into a parking lot and immediately exited his vehicle before the police approached him. Officer King had to tell Jordan three times to get back into his vehicle before he said, "Okay." Once Jordan was back inside his vehicle, Officer King asked him for proof of insurance and his driver's license and asked where he was coming from. When Jordan began talking, she immediately detected the odor of alcohol on his breath and person. She described his eyes as glassy and watery and said that his speech was slurred.[10] Officer King said that at that point, there was no doubt in her mind that Jordan was possibly intoxicated "based on the driving behavior and [her] speaking with him alone." Officer King had to ask Jordan twice more for his driver's license and proof of insurance. Jordan told Officer King that he had been to two bars that night, one not far from where he was stopped, and he admitted to having consumed three twelve-ounce beers.

Officer King conducted a DWI investigation, administering standardized field sobriety tests: the horizontal gaze nystagmus test, which resulted in six of

---

[10]Officer Eckstrom testified that in his brief contact with Jordan, he observed that Jordan's eyes were red and bloodshot, that Jordan slurred his speech, and that there was an odor of alcohol coming from the vehicle.

13

six possible clues of intoxication; the walk-and-turn test, which resulted in five of eight possible clues; and the one-leg stand test, which resulted in four of four possible clues.[11]   After conducting the field sobriety tests, the officers arrested Jordan.   Officer King said that she based her decision to arrest Jordan on everything from her initial observation of his vehicle through his performance on the third test, his odor of alcohol, his glassy, red eyes, his slurred speech, and his swaying.

Officer Eckstrom had run a driver's license check and criminal history check on Jordan, and at the time of the arrest, he informed Officer King that Jordan's record showed two DWI convictions, which put Jordan under the mandatory specimen requirement.  Officer King gave Jordan the DIC-24 statutory warning, and Jordan initially verbally consented to the blood test but then at the hospital ten minutes later, he refused to give a voluntary sample and said he "would take the hit on his license."  There was no in-car video of the field sobriety tests, and the police did not take Jordan back to the police station to record the sobriety tests because, according to Officer Eckstrom, "With a mandatory

---

[11]Officer King explained to the jury that standardized field sobriety tests are a collection of three tests adopted by the National Highway Traffic Safety Administration (NHTSA) that can indicate whether someone is impaired, that she had performed the tests many times, and that when testing Jordan, she had followed the standards promulgated by NHTSA.   Officer King said that the decision point for the walk-and-turn test was two clues and that Jordan lost his balance during her instructions for that test, stopped while walking, did not touch heel-to-toe, stepped off of the line, and performed an improper turn.   During the one-leg stand test, Jordan swayed, hopped, put his foot down, and used his arms for balance.

14

specimen situation, the closer to the specimen being taken to the actual offense time is preferable." Officers Eckstrom and King both testified that Jordan's truck was seized for forfeiture and eventually forfeited to the State.

Officer King stated that based on her interaction with Jordan that evening, she felt that he was intoxicated and had lost the normal use of his mental and physical faculties based on the introduction of alcohol into his system. She based her opinion on her initial observation of Jordan's driving behavior, his responses to her questions, and his standardized field sobriety test results.

The phlebotomist who drew Jordan's blood at the hospital and Officer King testified about the blood draw and chain of custody, and Joyce Ho, the Tarrant County Medical Examiner's office lab manager, further testified about chain of custody and about conducting the blood test and recording the results. Ho stated that it was important to refrigerate the blood sample to keep it from degrading, that the sample was refrigerated at the lab, and that Dr. Johnson would be the proper witness to testify about what happens to blood evidence when it is not properly refrigerated. Officer Eckstrom told prosecutors that in March 2012, as far as he knew, the blood sample after testing had not been preserved in the refrigerator but later learned that he was wrong and that the procedure was to refrigerate before and after testing. Dr. Robert Johnson, the Tarrant County Medical Examiner's office's chief toxicologist, testified that blood was refrigerated for purposes of testing alcohol concentration to prevent certain microbes in the blood from producing ethanol but that sodium fluoride could also prevent

15

fermentation and could do so even without refrigeration. Dr. Johnson said that the vials used by the State for blood draws contained sodium fluoride to preserve the blood and prevent microbial formation.

Dr. Johnson testified that he was familiar with Jordan's toxicology test results conducted by his office and that the lab's protocol was for every case to be reviewed three times—once by the analyst that does the work, next as a peer review by another analyst in the lab, and then by the approving official prior to release of the results. He was not chief toxicologist when the report was generated; Dr. Angela Springfield, his predecessor, signed off on the report to approve it. Dr. Johnson said that based on what he knew of the case, all procedures were properly followed to generate the test record, which showed Jordan's blood alcohol content at 0.18 grams per decaliter, or above 0.08, the limit for legal intoxication. He said that he knew the peer review had been done, just not who did it, and that he had no personal knowledge regarding whether Jordan's blood sample had been refrigerated or contained sodium fluoride.[12] Dr. Johnson stated that it would not be possible for an average male to achieve a 0.18 blood alcohol concentration by drinking three beers. Finally, as set out

---

[12]Jordan argues that the trial court erred by denying his motion to suppress the results because he was not able to "cross-examine[] the unnamed, unidentified individual who conducted the peer review" and that Dr. Johnson lacked the personal knowledge to explain Dr. Springfield's role in the testing of the blood.

above in our discussion of Jordan's first issue, Deputy Rojas testified about fingerprinting Jordan and compared the fingerprints to the State's exhibits.

During his closing argument, the prosecutor argued that the State had proven all three bases for DWI—mental faculties, physical faculties, and blood alcohol content—and that the blood test results were reliable because all of the protocols had been followed. Jordan responded that just because some of the evidence was admissible did not mean that the contents of that evidence were accurate, particularly the Taylor County conviction, that it did not matter how Jordan performed his field sobriety tests when the police officers had already decided to arrest him based on his two prior DWI convictions and to take his truck, that there was no video to support the officers' testimonies about the events of that night, and that there was no testimony to explain how the 0.18 blood alcohol content number was obtained. In its rebuttal, the State referred the jury to Dr. Johnson's and Ho's testimonies and argued that no one had it out for Jordan, that it was "very clear what happened that night, whether it's the blood, the blood draw, his driving behavior, everything," and that the driving record and judgments of conviction were certified and belonged to Jordan.

The trial court's charge defined "intoxicated" as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body *or* having an alcohol concentration of 0.08 or more." [Emphasis added.] When the jury is authorized to convict on any one of several theories or methods of commission of the same offense and returns a general verdict of guilt, it does

17

not matter that the evidence is insufficient to sustain one or more of the theories, so long as the evidence is sufficient to sustain conviction under at least one theory. *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003) (citing *Rabbani v. State*, 847 S.W.2d 555, 558–59 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 926 (1993)). Based on our review of the record as set out above, even disregarding the blood-test results, the jury could have found that Jordan was intoxicated by not having the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body, rendering harmless the trial court's error, if any, in the admission of the blood-test results. *See* Tex. R. App. P. 44.2(a); *Swearingen*, 101 S.W.3d at 95; *see also Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (enumerating nonexclusive list of signs recognized as evidence of intoxication, including slurred speech, bloodshot eyes, odor of alcohol on the person or his breath, unsteady balance, and staggered gait); *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979), for the proposition that "as a general rule, the testimony of an officer that a person is intoxicated provides sufficient evidence to establish the element of intoxication"); *Zill v. State*, 355 S.W.3d 778, 786 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("A defendant's poor performance on the standardized field sobriety tests is further evidence of intoxication."); *cf. State v. Mechler*, 153 S.W.3d 435, 441–42 (Tex. Crim. App. 2005) (holding in rule 403 analysis with regard to whether the State needed breathalyzer evidence that the State had sufficient other probative

evidence to establish defendant's intoxication in the form of the arresting officer's testimony about the defendant's driving, smell of alcohol on his breath, admission to drinking "[a] little" alcohol, and failing field sobriety tests). Therefore, we overrule Jordan's second issue.

## IV. Conclusion

Having overruled both of Jordan's issues, we affirm the trial court's judgment.

/s/ Bob McCoy

BOB MCCOY
JUSTICE

PANEL: MCCOY, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 26, 2014