

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00555-CR
### NO. 02-12-00556-CR

---

BRADLEY STEPHEN MAXWELL                          APPELLANT

V.

THE STATE OF TEXAS                                     STATE

----------

### FROM THE 90TH DISTRICT COURT OF YOUNG COUNTY
### TRIAL COURT NO. 09757
### TRIAL COURT NO. 09758

----------

## MEMORANDUM OPINION[1]

----------

Appellant Bradley Stephen Maxwell was charged by separate indictment in each case with the offense of aggravated sexual assault of a child. A jury convicted him of both offenses in a single trial and assessed his punishment at

---

[1]*See* Tex. R. App. P. 47.4.

life imprisonment, enhanced by a single prior conviction, and a $10,000 fine. The trial court sentenced him accordingly, stacking the sentences. Appellant brings three issues, challenging the admission of his out-of-court statements and letter, the sufficiency of the evidence to support his convictions, and the exclusion of impeachment evidence. Because the evidence is sufficient to support the jury's verdicts and because the trial court did not commit reversible error, we affirm the trial court's judgments.

**Brief Summary of Facts**

The complainant testified that Appellant had penetrated both the complainant's mouth and anus with Appellant's penis in Olney, Texas. The complainant was eleven years old when he reported the alleged assaults to his mother.

**Sufficiency of the Evidence**

In his second issue, Appellant argues that the evidence is insufficient to support his convictions because the complainant was not a credible witness. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] This standard gives full play to the

---

[2]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

2

responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[3]

The trier of fact is the sole judge of the weight and credibility of the evidence.[4] Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.[5] Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict.[6] We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.[7]

The complainant testified to the requisite elements of each offense. The jury apparently found his testimony credible. We must defer to the jury's

---

[3]*Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

[4]*See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768.

[5]*Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

[6]*Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

[7]*Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360.

determinations of credibility and not set ourselves up as the thirteenth juror.[8]  We overrule Appellant's second issue.

**Admissibility of Appellant's Statements**

In his first issue, Appellant argues that the trial court erred by admitting a letter of apology he wrote at the request of law enforcement as well as statements that he made on February 15, 2011, and February 23, 2011, concerning the offenses and that they were all obtained in violation of his Sixth Amendment right to counsel.  Specifically, on appeal,

> Appellant says such statements should be suppressed because they were not voluntary, were products of custodial interrogation for long periods of time leading to Appellant's exhaustion, without access to family or his appointed attorney, and were obtained by coercion, intimidation and duress.  They were obtained in violation of his Sixth Amendment right to counsel.

Regarding the February 15, 2011 statement, Appellant had already requested counsel beforehand.  Regarding the later statement and the letter, he had already received appointed counsel.  Appellant contends that the February 15, 2011 statement was the result of continued questioning after counsel had been requested and that the letter and February 23, 2011 statement resulted from continued questioning after counsel had been both requested and appointed.

Appellant filed a pre-trial "Motion for Protection."  The portion of the motion dealing with the subject of his first appellate issue provides,

---

[8]*Brooks v. State*, 323 S.W.3d 893, 901 (Tex. Crim. App. 2010).

4

4.      Additionally, [Appellant] moves to exclude the following under this Motion for Protection:  any statements made by [him], any "letter" written to the alleged victim as a result of custodial interrogation, any and all history of his arrest, prior arrests, or other interaction with law enforcement.

5.      Specifically, the length of the custodial questioning by law enforcement officials of the state was excessive, leading to exhaustion, confusion, intimidation and coercion of [Appellant] who consistently denied any memory of the events suggested by officials. The Texas Ranger interview used excessive, repeated questioning, and suggested words to [Appellant] such as "hardwiring", "blueprint", [and] "triggers" which, after hours of questioning and exhaustion, [Appellant] began to repeat about himself.  Even so, [Appellant] consistently refused to make an open admission of responsibility or culpability.  At best he said only something to the effect that "if the child says so then it must be true because the kid is a good kid[."]

6.      It was law enforcement who suggested that [Appellant] write the child a letter of apology.  Again the letter is nothing more than a continuation of the "I don't remember but if you say so, because you are a good kid" theme.

7.      Nonetheless, if the prosecutor is allowed to allude to, comment upon, inquire about, or introduce evidence concerning any of the above matters, ordinary objections during the course of trial, even sustained and including proper instructions to the jury, will not remove the harmful effect of the evidence in view of its ambiguous but suggestive content.  This is highly prejudicial and lacks probative force.

The hearing on this motion took place during the trial.  At the *Jackson v. Denno*[9] hearing, the trial court asked for clarification:

[THE COURT:]              Now, explain to me again.  Are there two statements?

[DEFENSE COUNSEL]: There's actually three, Your Honor.

---

[9]378 U.S. 368, 84 S. Ct. 1774 (1964).

| | |
|---|---|
| THE COURT: | There's three statements? |
| [THE STATE]: | Yeah, that's right.  There was one that was taken by Chief Davis that was not in custody. |
| THE COURT: | Okay. |
| [THE STATE]: | And then there were two statements taken by Ranger Lain, one was on February 15th and one was on February 23rd. |

Appellant made it clear that the statements of February 15 and February 23 were the only statements that he wanted to discuss in the hearing because he considered them the only two custodial statements.  The trial court sought more clarification:

| | |
|---|---|
| THE COURT: | And the allegation of the low blood sugar was which one? |
| [DEFENSE COUNSEL]: | The 23rd, Your Honor, at the end when he would have been writing the letter.  And the low blood sugar issue is something where we have a doctor that has been attempted to be subpoenaed, not served yet, Dr. Cawley, because he has interest in another part of this case so I thought one physician would be fine for that purpose.  He's not an expert that's been designated, but we did not know the blood sugar problems existed till we received the records early this week from Tommy at the Sheriff's Department that it was an issue so we had no anticipation of any need for a sugar— |

Defense counsel informed the trial court,

[I]t looks like the statement they are trying to introduce may be at a time that was previous to the time when the low blood sugar issues may have been a part.  So I don't have that medical expert yet, but I

6

am working on getting the subpoena for the second statement. That would be the [February] 23rd statement. I believe they're trying to introduce the [February] 15th statement since that's the one they typed up.

Defense counsel was primarily concerned that the police had allegedly taken advantage of Appellant's low blood sugar level to secure statements from him. As to the statement obtained on February 15, Ranger Lain testified that the Texas Rangers had tried to find Appellant to question him in a noncustodial setting but had been unable to locate him. After the arrest, Lain went to the jail to interview Appellant:

Q.  Okay.  Did he seem willing to talk with you at the time?

A.  Yes, ma'am.

Q.  Did he seem agitated or upset or did he seem like he wanted to be there talking to you?

A.  His body language and his demeanor indicated to me that he was eager to talk to me and also he stated that he wanted to sit and discuss it.  He's been anticipating trying to discuss and resolve any issues.

Q.  So he didn't seem reluctant to be there speaking with you, did he?

A.  Absolutely not.

Q.  And approximately how long did this interview last?

A.  Approximately three hours I think.

Q.  And during that time did he ever ask for food or ask for any sort of medical attention or anything?

A.  No, ma'am.

Q. And had he asked you for anything of that nature would you have been happy to accommodate him?

A. Yes, ma'am. Absolutely.

Q. Is that what you would routinely do in your interviews?

A. Yes, ma'am.

Ranger Lain returned to the jail to interview Appellant on February 23:

Q. Did he appear to be coherent at the time?

A. He did.

Q. Did he appear to have any of those diabetic red flags that [Defense Counsel] was talking about a moment ago?

A. No, ma'am. I did not notice any of those.

Q. Was he shaky? [S]weaty? [A]nything of that nature?

A. No, ma'am. Not that I recall.

Q. Had you noticed anything like that and you were concerned about something, in your training are you advised to get medical personnel into an interview room under those kinds of circumstances?

A. Yes, ma'am. If there's any kind of circumstance where it appears that the subject is in any kind of physical medical distress the interview would be over.

Q. And do you recall approximately how long that interview lasted on the 23rd?

A. That one is approximately two hours.

Q. Approximately two hours. And during that interview, did he produce any writings?

A. Yes, ma'am, he did.

Q. And what was it that he produced?

8

A.  He wrote a letter of apology to the victim apologizing for what he had done to him.

Q.  Did you coerce him into writing that letter?

A.  I did not.

. . . .

Q.  Okay.  And did you accomplish this during the two hours or did he do this after the interview?

A.  This was during the interview.

Q.  Okay.  So when he completed this document and he signed it would you have had an opportunity to identify it in the interview as a completed document at a certain time in the interview?

A.  When he signed his name at the bottom and said he was finished writing.

Q.  Did you stop the interview then or did you continue on for longer?

A.  I think we may have talked a few minutes after that.  I don't recall exactly.

Q.  So it would be close to two hours into the interview?

A.  I would have to go back to look and see exactly when it was that he—

Q.  Would it surprise you that he had a blood sugar of 56 at the end of your interview?

A.  It would not surprise me because I have no knowledge of that.

Although Appellant raised the issues of length of questioning and absence of counsel in much of the wording he employed in his brief, at the hearing on the

motion, his position was that his statement and letter were not voluntary because he suffered from low blood sugar.

The trial court stated at the end of the hearing,

Well, the problem that I'm having . . . is I've heard absolutely no testimony from this stand on either of the interviews of any effects . . . from someone that was trained to at least have some initial valuations of the effects of diabetes. I've had absolutely no evidence whatsoever that he was acting under the influence or under the problem of diabetes, so I—I don't find at least even in the second one—that's the only one that you're alleging. I'm not seeing anything that would indicate that the low blood sugar by itself would have affected the voluntariness of it.

Defense counsel responded,

And, Your Honor, we know that there [are] instances through case law and through the voluntariness, knowingly and intelligently waiving rights that there can be medical issues.

The trial judge was told that the complaint before the court was the voluntariness of the letter that Appellant was induced to write because his will was influenced by his weakened condition as a result of the combination of low blood sugar and the length of the interrogation. The total length of the interrogation was five and a half hours: two separate periods of questioning separated by more than a week, the longest period of interrogation being about three and a half hours.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request,

10

objection, or motion.[10]  A reviewing court should not address the merits of an issue that has not been preserved for appeal.[11]  The hearing referred to in Appellant's brief dealt with low blood sugar.  When the State offered the letter at trial, Appellant said, "No objection."

Additionally, although Appellant made certain objections to the admissibility of the other statements, in the trial court he did not raise the Sixth Amendment claim he now raises on appeal.  The trial court was asked to determine whether the letter and any statement were involuntary because Appellant was suffering from low blood sugar.  Appellant's complaints on appeal are much broader, but they were never before the trial court, and the trial court was never asked to rule on them.  Trial counsel specifically limited its motion to the voluntariness of the letter because of the effect of low blood sugar.  The issue of the right to counsel was not called to the attention of the trial court, if it was an issue, and the trial court ruled on it only as it related to the issue Appellant claimed to raise.  The trial court was never made aware that any other voluntariness complaints Appellant raises on appeal were before the trial court.

---

[10]Tex. R. App. P. 33.1(a)(1); *Landers v. State*, 402 S.W.3d 252, 254 (Tex. Crim. App. 2013); *Sample v. State*, 405 S.W.3d 295, 300 (Tex. App.—Fort Worth 2013, pet. ref'd).

[11]*Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g); *Sample*, 405 S.W.3d at 300.

Because Appellant has not preserved these complaints he raises on appeal, we overrule his first issue.

**Exclusion of Impeachment Evidence**

In his third issue, Appellant argues that the trial court reversibly erred by excluding his proffered impeachment evidence. If a party fails to provide legal authority to support its position, the appellate court may properly overrule the issue or point as inadequately briefed.[12] Appellant has directed us to no legal authority in support of his argument. We therefore overrule his third issue.

**Conclusion**

Having overruled Appellant's three issues on appeal, we affirm the trial court's judgments.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 3, 2014

---

[12]Tex. R. App. P. 38.1(i); *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000); *Lopez v. State*, No. 02-12-00179-CR, 2013 WL 5303593, at *5 (Tex. App.—Fort Worth Sept. 19, 2013, pet. ref'd) (mem. op., not designated for publication).